UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS JACK MCNINCH,　　　　　Case No.: 21-12671
　　　Plaintiff,
v.　　　　　　　　　　　　　　　Shalina D. Kumar
　　　　　　　　　　　　　　　　United States District Judge
SPUR, *et al.*,
　　　Defendants.　　　　　　　　Curtis Ivy, Jr.
_____/　　　United States Magistrate Judge

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (ECF No. 10) and PLAINTIFF'S MOTION TO WAIVE TIME (ECF No. 15)

## I.　　PROCEDURAL HISTORY

Plaintiff Thomas Jack McNinch filed this prisoner civil rights suit, without the assistance of counsel, on November 15, 2021.  (ECF No. 1).  This case was brought under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against federal prison officials for alleged violations of the Eighth and Fourteenth Amendments to the United States Constitution.  The defendants moved to dismiss the complaint.  (ECF No. 10).  The motion is fully briefed.  This case was referred to the undersigned for all pretrial proceedings.  (ECF No. 11).

For the reasons discussed below, the undersigned recommends that Defendants' motion to dismiss be **GRANTED** and Plaintiff's motion to waive filing time (ECF No. 15) be terminated as moot.

## II.    BACKGROUND

Plaintiff was assigned to the top bunk in the housing unit of the federal prison facility where he served part of a sentence, FCI Milan.  The bunk beds were not equipped with a ladder to assist inmates with getting in and out of the top bunk. On December 19, 2020, at 11 p.m., because he did not have a ladder, he fell while trying to get off the top bunk and broke three metatarsals.  He required surgery to repair the injury.  (ECF No. 1, PageID.7).

He asserts that prison officials and the Director of the Bureau of Prisons ("Defendants") were deliberately indifferent to a serious risk of harm posed by the failure to provide ladders for top bunk inmates.  He also asserts they violated his right to due process under the Fourteenth Amendment by abusing their discretion in failing to protect inmates.  (*Id.* at PageID.4).  He sues these defendants because they were in the "chain of command" at the time of his injury and the facts are the same against all four defendants—they failed to act to protect him from a "known safety hazard."  (*Id.* at PageID.35).

Defendants move to dismiss the case arguing (1) they are shielded from suit by qualified immunity, (2) *Bivens* does not extend to the facts here, and (3) the *Bivens* claim fails for lack of specificity.

## III.    ANALYSIS AND RECOMMENDATIONS

A.    <u>Standard of Review</u>

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court also holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir.

1989)).  "[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

## B.   Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities.  A suit against a federal official in their official capacity is essentially a suit against the United States.  *See Williams v. Federal Bureau of Prisons*, 2021 WL 5829507, at *3 ( W.D. Tenn. Dec. 8, 2021).  Suits against the United States are barred by sovereign immunity unless the government waives immunity.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).  Plaintiff has not shown that the government has waived sovereign immunity, and indeed it appears it has not.  *See Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) (citing *id.* at 483-86).  For these reasons, the official capacities claims should be dismissed.

C.    <u>Due Process Claim</u>[1]

Defendants did not expressly address the due process claim in their briefing.

Instead, they sometimes address a general constitutional violation.  Because

Plaintiff is a prisoner and is proceeding *in forma pauperis*, the Court can (and

must) screen the complaint and dismiss claims for which he failed to state a proper

claim to relief under the Prison Litigation Reform Act.  28 U.S.C. § 1915(e)(2) (B)

and § 1915(e)(2)(A).  Thus, Defendants' failure to expressly address the due

process claim does not foreclose dismissal by the Court.

As best can be discerned, the due process claim is that the Defendants

abused their discretion in failing to eliminate or minimize a risk of harm to

prisoners by neglecting to provide ladders for the top bunk.  In the view of the

undersigned, this claim is really an attempt, intentional or not, to construct a due

process claim out of an Eighth Amendment deliberate indifference to safety claim.

The gravamen of the complaint is the indifference to a risk of harm attendant to not

having ladders to access the top bunk.  The Eighth Amendment provides an

explicit source of constitutional protection to Plaintiff concerning his failure to

protect claims.  *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Whitley v.*

---

[1] Although Plaintiff raised a claim under the Fourteenth Amendment against federal officials, the undersigned treats it as brought under the Fifth Amendment.  *See Aggarwal v. Sec'y of State*, 951 F. Supp. 642, 649 (S.D. Tex. 1996) (explaining that the due process clause of the Fifth Amendment pertains to the federal government and the Fourteenth Amendment clause pertains to the states).

*Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where

the Eighth Amendment supplies a textual source for prison-condition claims);

*Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth

Amendment supplies the explicit textual source of constitutional protection for

claims governing a prisoner's health and safety, the plaintiff's substantive due

process claim was subject to dismissal).  Because Plaintiff's complaints are

grounded in the Eighth Amendment, the due process claim should be dismissed.

C.   Lack of Specificity

Defendants contend that Plaintiff's claims should be dismissed because he

did not allege facts connecting any of them to the alleged constitutional violations.

(ECF No. 10, PageID.92).  In *Iqbal*, 556 U.S. at 676, the Court stated that a

plaintiff in a *Bivens* suit (in all suits) "must plead that each Government-official

defendant, through the official's own individual actions, has violated the

Constitution."  "Government officials may not be held liable for the

unconstitutional conduct of their subordinates under a theory of *respondeat*

*superior*."  *Id.*

Plaintiff did not plead individual action by any of the defendants.  He alleges

instead that they were named in this lawsuit because they were in the "chain of

command" when he was injured.  He asserts they are responsible for not

recognizing a ladder-less bunk bed would pose a safety risk, that they failed to act

to prevent injury.  (ECF No. 1, PageID.35).  The mere failure to act does not

amount to personal involvement.  *Shehee v. Lutrelle* 199 F.3d 295, 300 (6th Cir.

1999) (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.

1998)).  Because Plaintiff did not connect the Defendants' conduct with a specific

constitutional violation, the claims should be dismissed.  As addressed below, the

undersigned finds additional reasons why the claims should be dismissed.

      D.    <u>Qualified Immunity</u>

      Defendants bear the burden of establishing qualified immunity, but plaintiff

bears the burden of showing that Defendants' conduct violated a right so clearly

established that a reasonable official in their position would have clearly

understood that they were under an affirmative duty to refrain from such conduct

or to act in a certain way.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002)

(citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff

to show that the defendant is not entitled to qualified immunity").  The Supreme

Court has established a two-part test to determine whether qualified immunity

applies.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The first part of the test

involves a determination of whether the facts of the case, viewed in the light most

favorable to the plaintiff, "show the officer's conduct violated a constitutional

right."  *Id.*  If the first question is resolved in the affirmative, then the court should

decide "whether the right was clearly established."  *Id.*

A right is clearly established if, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotations omitted).  The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted.  *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  "[C]ourts must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'"  *Moderwell v. Cuyahoga Cnty., Ohio*, 997 F.3d 653, 660 (6th Cir. 2021) (quoting *Wesby*, 138 S. Ct. at 590).  That said, it "defeats the purpose of § 1983 to define the right too narrowly (as the right to be free of needless assaults by left-handed police officers during Tuesday siestas)."  *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508–09 (6th Cir. 2012).  An official action need not have  been held unlawful, but "in the light of pre-existing law the unlawfulness must be apparent."  *Wilson*, 526 U.S. at 615 (quoting *Anderson*, 483 U.S. at 640).  Typically, "[i]n determining whether a right was clearly established, we look first to decisions of the Supreme Court, then to our own precedents, and then to decisions of other courts of appeal, and we ask whether these precedents 'placed

the . . . constitutional question beyond debate.'" *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

If both parts of the qualified immunity test are resolved in the affirmative, then the doctrine of qualified immunity does not apply, and the case can proceed. The court may address the two factors in whichever order it deems appropriate based on several factors, not the least of which is judicial economy. *Pearson v. Callahan*, 555 U.S. 223, 227 (2009). As the Sixth Circuit has observed, "[t]his generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'" *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Defendants argue they are entitled to qualified immunity on the Eighth Amendment claim because Plaintiff did not plead supporting a constitutional violation.[2] They marshal published and unpublished case law from this district and others which state that a prison's failure to provide chairs or ladders to access the top bunk does not state a deliberate indifference claim. (ECF No. 10, PageID.76-79).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S.

---

[2] Defendants did not expressly address the Fourteenth Amendment claim in their briefing.

825, 828 (1994).  To establish deliberate indifference, an inmate must satisfy an objective and subjective prong.  *Id.* at 834.  The objective prong requires a showing that the deprivation alleged is "sufficiently serious," such that he is "incarcerated under conditions posing a substantial risk of serious harm."  *Id.*  The conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  The subjective prong requires the inmate to show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.

Plaintiff failed to state a violation of the Eighth Amendment.  "[S]everal courts have addressed the issue of bunk-bed access and found no deprivation of a minimal civilized measure of life's necessities."  *McGowan v. Young*, 2018 WL 1324740, at *4 (E.D. Mich. Mar. 15, 2018) (collecting cases).  In *McGowan*, the plaintiff alleged he was assigned to the top bunk at his prison.  As here, the bunk beds were not equipped with ladders to assist prisoners getting into and out of the top bunk.  One day, while trying to get into his bunk, the plaintiff fell to the ground and injured his back.  He brought suit alleging an Eighth Amendment violation for the failure to provide a safe living environment.  *Id.* at *1-2.  This, the court held, did not amount to an Eighth Amendment violation.  Similarly, in *Moore v. United States*, 2012 WL 2412096 (N.D. Ohio June 26, 2012), a federal prisoner brought a *Bivens* action against prison staff alleging that the failure to provide top bunk

10

ladders created a dangerous situation.  The plaintiff fell attempting to climb from the top bunk to the floor.  *Id.* at *2.  The court summarily dismissed the bunk bed claim holding that "[t]he failure to install bunk bed ladders does not rise to the level of an 'extreme deprivation' for purposes of demonstrating an Eighth Amendment violation."  *Id.* at *5.

These and the other cases cited by Defendants persuasively establish that Plaintiff's bunk bed claim does not rise to the level of an Eighth Amendment violation.  The undersigned is unaware of contrary authority.[3]  Because there was no Eighth Amendment violation, the Defendants are entitled to qualified immunity on the claim.  Moreover, since the courts that have passed on the issue have found the lack of ladders does not violate the constitution, there is no clearly established right to a ladder to access the top bunk.  For this reason as well, Defendants are entitled to qualified immunity on the claim.

E.    *Bivens*

Defendants next argue that the Court should not extend *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), to this case, which it

---

[3] Plaintiff began his response brief by stating that he is not an attorney, does not know how to write a brief, and could only get two hours per week in the law library, but with no law clerk assistance, to prepare this brief.  (ECF No. 14).  The undersigned is aware Plaintiff is proceeding without the assistance of counsel, and views his submissions in a favorable light.  That said, as mentioned above, briefs and the like are not entitled to the liberal construction given to pleadings.  And it is notable that Plaintiff submitted his response brief about one month before the deadline, suggesting he did not need more time to research and draft his brief.

characterizes as a new context.  If Plaintiff's claims have survived to this point, the following applies.

In *Bivens*, the Supreme Court of the United States established that an individual may seek monetary damages from a federal official in his or her individual capacity for an alleged violation of the Fourth Amendment's prohibition on unreasonable search and seizure, even with no statutory authority.  *Id.* at 396-97.  *Bivens* is different from 42 U.S.C. § 1983, which allows a plaintiff to sue state actors for constitutional violations.  The Supreme Court has limited the applicability of *Bivens* to only a handful of constitutional violations, the *Bivens* trilogy.  *See, e.g.*, *Bivens*, 403 U.S. at 396 (providing a remedy for violations under the Fourth Amendment); *Davis v. Passman*, 442 U.S. 228, 248-49 (1979) (providing a *Bivens* remedy against a member of Congress for gender discrimination under the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14, 18-21 (1980) (providing a *Bivens* remedy for failure to provide adequate medical treatment under the Eighth Amendment Cruel and Unusual Punishments Clause).  "Since 1980, [] the Supreme Court has 'consistently refused to extend *Bivens* liability to any new context or new category of defendants.'" *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

"[T]he Supreme Court devised a two-part inquiry to determine when we should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action." *Id.*  "First, we ask whether the claim arises in a new *Bivens* context." *Id.* The context is considered "new" "if it differs in virtually any way from the *Bivens* trilogy." *Id.*  The trilogy are cited above: *Bivens*, *Davis*, and *Carlson*.  If the context differs, the second question is whether any special factors counsel against extending a cause of action.  *Id.*  The Supreme Court recently stated the two-step framework often resolved to single question: "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)).  In answering this question, the undersigned is mindful that the Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675).  Indeed, it suggested that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 2022 WL 2056291, at *11.  This statement alone suggests that the Court should not extend a cause of action to Plaintiff's claims.

Plaintiff grounds the claim in his assertion that he has a due process right to be free from abuse of discretion.  The abuse of discretion was the alleged decision to not provide ladders for the bunk beds.  Neither of the *Bivens* trilogy passed on

this issue.  The claim in *Davis* was a Fifth Amendment due process claim related to

gender discrimination in the workplace.  Here, the due process claim relates to a

risk of harm without bunk bed ladders.  Thus, the claim implicates a new context

for application of a *Bivens* remedy.  Similarly, the bunk bed deliberate indifference

claim presents a new context.  *Carlson* involved a prisoner's deliberate

indifference claim that prison officials failed to treat his medical condition.  But if

this case differs in any way from the trilogy, it is a new context.  Plaintiff's bunk

bed claim is a "new context."  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017)

(finding prisoner's Fifth Amendment due process claims for harsh prison

conditions, though having parallels to *Carlson*, presented a new context in part

because such precedents did not provide a meaningful guide for official conduct);

*see also Severe v. United States*, 2021 WL 4521345, at *13 (D. Md. Oct. 1, 2021)

(finding prisoner's Eighth Amendment for failure to provide ladder to access the

top bunk was a new context);  *Dudley v. Streeval*, 2020 WL 710151, at *5, n. 2

(E.D. Ky. Feb. 12, 2020) (noting the Eighth Amendment claim about inability to

easily access the top bunk may not be cognizable because it would have extended

*Bivens* beyond the trilogy in which it was applied).

Because this case presents a new *Bivens* context, the Court must analyze

whether special factors counsel hesitation in expanding *Bivens* "in the absence of

affirmative action by Congress."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1847 (2017).

A special factor to be considered is whether alternative remedies exist for Plaintiff to seek redress of his claims.  "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi*, 137 S. Ct. at 1858.  The Bureau of Prison's administrative remedy program provides just such an alternative process for prisoners seeking relief.  *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program (ARP)") (citing 28 CFR § 542.10 (2001)); *Coe v. United States*, 2020 WL 1977321, at *2 (W.D. Tenn. Apr. 24, 2020) ("The BOP grievance process constitutes an adequate alternative remedial structure that counsels against expanding *Bivens* to Plaintiff's claim.").  Plaintiff did not state this process was unavailable to him.  The availability of this process counsels against extending *Bivens*.

Separation of powers is an important consideration here.  Courts have noted that, by enacting the Prison Litigation Reform Act, "Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Zigler*, 137 S.C.t at 1865.  "Congress' legislative action in the area of prisoners' rights through the PLRA, including by requiring an

administrative process, weighs against extending a *Bivens* remedy to the plaintiff's claims." *Oneil v. Rodriguez*, 2020 WL 5820548, at *4 (E.D.N.Y. Sept. 30, 2020).

The undersigned suggests that special factors counsel against extending a *Bivens* cause of action to Plaintiff's claims here.

F. <u>Injunctive Relief</u>

Plaintiff's request for injunctive relief should be dismissed. His complaint alleges events that occurred at FCI Milan, a federal prison. Plaintiff has since been transferred to another facility. A prisoner's request for injunctive relief becomes moot when he is transferred to another facility. *See Coleman v. Bowerman*, 474 F. App'x 435, 438 (6th Cir. 2012); *Cardinal v. Metrish*, 564 F.3d 794, 798–99 (6th Cir. 2009); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding prisoner's claim for injunctive and declaratory relief mooted by his transfer to new facility). Moreover, "a Bivens action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860 (quoting *Malesko*, 534 U.S. at 74). He says he "would like to see a policy put in place requiring the B.O.P. to have ladders on all bunks for getting in and out of the top bunk." (ECF No. 1, PageID.19). His request for injunctive relief is targeted at altering the Federal Bureau of Prison's policies, and is not a proper subject here.

IV. **RECOMMENDATION**

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 10) be **GRANTED**, that Plaintiff's motion to waive time to file (ECF No. 15) be **TERMINATED AS MOOT**, and the case be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 14, 2022                          s/Curtis Ivy, Jr.
                                              Curtis Ivy, Jr.
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on July 14, 2022.

                                              s/Kristen MacKay
                                              Case Manager
                                              (810) 341-7850